UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| JOHN T., <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, Acting Commissioner of the Social Security Administration, <br><br> Defendant. | **MEMORANDUM DECISION AND ORDER AFFIRMING THE COMMISSIONER'S DECISION DENYING DISABILITY BENEFITS** <br><br><br> Case No. 2:22-cv-00183 <br><br> Magistrate Judge Daphne A. Oberg |

Plaintiff John T.[1] filed this action for judicial review[2] of the Acting Commissioner of the Social Security Administration's ("Commissioner") decision denying his application for disability insurance benefits under Title II of the Social Security Act.[3] The Administrative Law Judge ("ALJ") denied Mr. T.'s application, finding he did not qualify as disabled.[4] Mr. T. argues the ALJ erred by (1) making a residual functional capacity determination without fully crediting any of the medical opinions; (2) failing to consider medical opinion evidence of a treating provider; and (3) failing to resolve a conflict between the vocational expert's testimony and the Dictionary of Occupational Titles.[5]

---

[1] Pursuant to best practices in the District of Utah addressing privacy concerns in certain cases, including social security cases, the court refers to Plaintiff by his first name and last initial only.

[2] (*See* Compl., Doc. No. 2.)

[3] 42 U.S.C. §§ 401–434.

[4] (Certified Tr. of Admin. R. ("Tr.") 10–20, Doc. No. 12.)

[5] (*See* Opening Br., Doc. No. 17.)

1

The court[6] has carefully reviewed the record and the parties' briefs.[7] Because the ALJ applied the correct legal standards and his findings are supported by substantial evidence, the Commissioner's decision is affirmed.

## STANDARD OF REVIEW

Section 405(g) of Title 42 of the United States Code provides for judicial review of a final decision of the Commissioner. This court reviews the ALJ's decision and the whole record to decide whether (1) the ALJ applied the correct legal standards and (2) substantial evidence supports the ALJ's factual findings.[8] "[F]ailure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principals have been followed is grounds for reversal."[9]

"[A]n ALJ's factual findings . . . shall be conclusive if supported by substantial evidence."[10] Although the sufficiency threshold for substantial evidence is "not high," it is "more than a mere scintilla."[11] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[12] "The possibility of drawing two

---

[6] The parties consented to proceed before a magistrate judge in accordance with 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Doc. No. 8.)

[7] The appeal is determined on the written memoranda, as oral argument is unnecessary. *See* DUCivR 7-1(g).

[8] 42 U.S.C. § 405(g); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

[9] *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted).

[10] *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153, ___ U.S. ___ (2019) (internal quotation marks omitted).

[11] *Id.* at 1154 (internal quotation marks omitted).

[12] *Id.* (internal quotation marks omitted).

inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence."[13] The court may not substitute its judgment for that of the ALJ nor may it reweigh the evidence.[14]

## APPLICABLE LAW

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months."[15] Under the Social Security Act, an individual is considered disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."[16]

In determining whether a claimant qualifies as disabled within the meaning of the Social Security Act, the ALJ uses a five-step sequential evaluation. The analysis requires the ALJ to consider whether:

1) The claimant is engaged in substantial gainful activity;

2) The claimant has a severe medically determinable physical or mental impairment;

3) The impairment is equivalent to one of the impairments which precludes substantial gainful activity, listed in the appendix of the relevant disability regulation;

---

[13] *Lax*, 489 F.3d at 1084 (internal quotation marks omitted).

[14] *See Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004).

[15] 42 U.S.C. § 423(d)(1)(A).

[16] *Id.* § 423(d)(2)(A).

    4) The claimant has a residual functional capacity to perform past relevant work; and

    5) The claimant has a residual functional capacity to perform other work in the national economy considering the claimant's age, education, and work experience.[17]

The claimant has the burden, in the first four steps, of establishing the disability.[18] At step five, the burden shifts to the Commissioner to show the claimant retains the ability to perform other work existing in the national economy.[19]

## PROCEDURAL HISTORY

On May 31, 2019, Mr. T. applied for a period of disability and disability insurance benefits under Title II, alleging disability beginning on December 1, 2017.[20] After an administrative hearing,[21] the ALJ issued a decision on August 2, 2021, finding Mr. T. was not disabled and denying his claim.[22]

At step two, the ALJ found Mr. T. had severe impairments of osteoarthritis of the right shoulder, obesity, depression, and anxiety—and nonsevere impairments of diabetes mellitus, peripheral neuropathy, hypertension, coronary artery disease, gastritis, reflux esophagitis, obstructive sleep apnea, and cervical spine degenerative disc disease.[23] At step three, the ALJ

---

[17] *See* 20 C.F.R. § 404.1520(a)(4); *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988).

[18] *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989).

[19] *Id.*

[20] (*See* Tr. 10, 194.)

[21] (*See id.* at 32–66.)

[22] (*Id.* at 10–20.)

[23] (*Id.* at 13.)

found Mr. T.'s impairments did not meet or medically equal an impairment listing.[24] At step four, the ALJ found Mr. T. had the residual functional capacity (RFC) to perform "medium work" with the following limitations:

> [H]e could frequently climb ramps and stairs. He could occasionally climb ladders and scaffolds. He could frequently balance and stoop. He could occasionally kneel, crouch, and crawl. He could occasionally reach overhead with right dominant upper extremity but his left upper extremity was not limited. He could perform goal-oriented but not assembly line paced work. He could occasionally interact with coworkers, supervisors, and the general public.[25]

Based on this RFC, the ALJ found Mr. T. unable to perform any past relevant work.[26] But at step five, the ALJ found Mr. T. capable of performing other jobs existing in significant numbers in the national economy.[27] Therefore, the ALJ found Mr. T. was not disabled.[28]

The Appeals Council denied Mr. T.'s request for review,[29] making the ALJ's decision final for purposes of judicial review.

## ANALYSIS

Mr. T. raises three claims of error. First, he argues the ALJ improperly made a residual functional capacity assessment without fully crediting any medical opinions.[30] Second, he argues the ALJ erred by failing to consider medical opinion evidence of a treating provider, Dr.

---

[24] (*Id.* at 14.)

[25] (*Id.* at 16.)

[26] (*Id.* at 18–19.)

[27] (*Id.* at 19–20.)

[28] (*Id.* at 20.)

[29] (*Id.* at 1–3.)

[30] (*See* Opening Br. 6–10, Doc. No. 17.)

Robert L. Treft.[31]  Finally, he argues the ALJ failed to resolve a conflict between the vocational expert's testimony and the Dictionary of Occupational Titles at step five.[32]  As explained below, each of these arguments fails.

### A. Residual Functional Capacity Assessment

Mr. T. argues the ALJ crafted an RFC "out of whole cloth" and based it on his own lay interpretation of medical evidence after finding none of the medical opinions fully persuasive.[33]  Mr. T. contends, as a result, the RFC is unsupported by substantial evidence.[34]

A claimant's RFC is the most the claimant can do in a work setting considering the claimant's limitations.[35]  When assessing the RFC, the ALJ is required to consider all medically determinable impairments, both severe and nonsevere, and "all of the relevant medical and other evidence" in the record.[36]

Consistent with these requirements, the ALJ in this case considered and thoroughly discussed Mr. T.'s testimony at the hearing, his medical records, and medical opinion evidence in assessing his RFC.[37]  With respect to medical opinions, the ALJ first considered the prior administrative medical findings of non-examining state agency consultants.[38]  These consultants

---

[31] (*See id.* at 10–12.)

[32] (*See id.* at 12–14.)

[33] (*Id.* at 8.)

[34] (*Id.* at 10.)

[35] *See* 20 C.F.R. § 404.1545(a)(1).

[36] *Id.* § 404.1545(a)(2)–(3).

[37] (*See* Tr. 16–18.)

[38] (*See id.* at 17–18.)

opined Mr. T. could perform "medium work with occasional overhead reaching on the right."[39] The ALJ found these opinions persuasive, noting the consultants' findings were "well supported by their explanation of and rationale for the limitations assessed based on their review of the record before them."[40] Nevertheless, based on Mr. T.'s testimony at the hearing, the ALJ found Mr. T. "would be more limited than [the consultants] assessed."[41]

The ALJ also considered the medical opinions of Dr. Zachary Farnworth, a treating provider.[42] Dr. Farnworth opined Mr. T. could perform "a limited range of sedentary work with postural and environmental limitations, up to marked limitations, more than twenty five percent off-task behavior, and more than four absences per month."[43] The ALJ found Dr. Farnworth's opinions unpersuasive, noting they were "supported with minimal explanation and rationale," unsupported by Mr. T.'s presentation in his treatment notes, and inconsistent with other treatment notes in the record and the prior administrative medical findings.[44] The ALJ then concluded that "[o]verall, the record supports the medium residual functional capacity outlined," citing imaging and examination records, Mr. T.'s hearing testimony, and the prior administrative medical findings.[45]

---

[39] (*Id.* at 17 (citing *id.* at 68–79, 81–94).)

[40] (*Id.* (citing *id.* at 87–88).)

[41] (*Id.* at 18.)

[42] (*See id.*)

[43] (*Id.* (citing *id.* at 541–51, 628–33).)

[44] (*Id.*)

[45] (*Id.*)

The ALJ did not err in making an RFC determination without fully crediting the medical opinion evidence. The Tenth Circuit has repeatedly held "there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question."[46] "[T]he ALJ, not a physician, is charged with determining a claimant's RFC from the medical record."[47] This is because "[t]he determination of RFC is an administrative assessment, based upon all the evidence of how the claimant's impairments and related symptoms affect her ability to perform work-related activities."[48] Thus, Mr. T.'s argument that the ALJ erred by crafting an RFC without fully crediting any of the medical opinions fails.

Mr. T. also has not demonstrated the ALJ improperly based the RFC on a lay interpretation of raw medical data. Mr. T. specifically points to a November 2017 MRI of his shoulder, arguing the ALJ must have based the RFC on a lay interpretation of this evidence.[49] But in discussing the medical evidence, including imaging and examination records, the ALJ cited to medical providers' reports, treatment notes, and observations.[50] Indeed, with respect to the November 2017 MRI, the ALJ cited only the medical provider's report and findings—not the

---

[46] *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012); *see also Terwilliger v. Comm'r, Soc. Sec. Admin.*, 801 F. App'x 614, 628 (10th Cir. 2020) (unpublished) (same); *Berumen v. Colvin*, 640 F. App'x 763, 766 (10th Cir. 2016) (unpublished) (same); *McDonald v. Astrue*, 492 F. App'x 875, 885 (10th Cir. 2012) (unpublished) (same).

[47] *Chapo*, 682 F.3d at 1288 (alteration in original) (quoting *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004)).

[48] *Young v. Barnhart*, 146 F. App'x 952, 955 (10th Cir. 2005) (unpublished).

[49] (*See* Opening Br. 8–9, Doc. No. 17.)

[50] (*See* Tr. 17.)

underlying imaging itself.[51] Nothing in the record suggests the ALJ substituted his own interpretation of raw medical data for that of Mr. T.'s medical providers. Thus, Mr. T. has not shown the ALJ erred in his consideration of the medical evidence.[52]

In sum, the ALJ did not err in making an RFC determination without fully crediting the medical opinion evidence, and he properly considered the medical records and other evidence in his assessment. The ALJ's RFC determination is supported by substantial evidence, including the prior administrative medical findings (which the ALJ largely credited), Mr. T.'s testimony regarding his own functional limitations, and other medical evidence in the record—all of which the ALJ discussed in detail in his decision.[53] Mr. T. has demonstrated no error in the ALJ's RFC assessment.

### B. Evidence from Dr. Treft

Mr. T. next argues the ALJ failed to consider medical opinion evidence of Dr. Robert L. Treft, a treating provider.[54] Specifically, Mr. T. argues the ALJ should have considered and discussed a February 2021 letter from Dr. Treft.[55]

---

[51] (*See id.* (citing *id.* at 405–07).)

[52] *See Colby V.W. v. Kijakazi*, No. 2:21-cv-00622, 2022 U.S. Dist. LEXIS 133507, at *7–8 (D. Utah July 26, 2022) (unpublished) ("[C]ontrary to Plaintiff's contention, when considering the objective medical evidence, the ALJ did not sit as a medical doctor making his own diagnoses and determinations regarding Plaintiff's medical conditions and what effect, if any, those conditions had on Plaintiff's abilities. Instead, the ALJ considered the observations of the various medical providers that they noted in their treatment notes. This is evident by the ALJ's citations to the medical providers' reports when discussing the medical evidence that these professionals observed.").

[53] (*See* Tr. 16–18.)

[54] (Opening Br. 10–11, Doc. No. 17.)

[55] (*Id.*)

Dr. Treft's February 2021 letter stated Mr. T. had "an inherited condition known as Treft's Syndrome."[56] Dr. Treft explained this genetic condition "causes vision loss, hearing loss, drooping eyelids and ataxia—a loss of coordination and ability to walk a straight line and ease of falling."[57] Dr. Treft stated: "This condition may cause [Mr. T.] to appear inebriated when he is not. He has some limited vision, both straight ahead and in his peripheral sight, but he still has sufficient to qualify for an unrestricted driver's license at this point in time."[58] Dr. Treft also indicated "there is no known treatment, but we are working on that solution."[59] The ALJ did not mention Dr. Treft's letter in his decision.

An ALJ is required to assess the persuasiveness of medical opinion evidence, including explaining how he considers the supportability and consistency of medical opinions.[60] However, agency regulations define "medical opinion" narrowly as "a statement from a medical source about what [the claimant] can still do despite [the claimant's] impairment(s) and whether [the claimant has] one or more impairment-related limitations or restrictions" in certain enumerated work-related abilities.[61] As relevant here, these include the claimant's "ability to perform physical demands of work activities, such as sitting, standing, [and] walking," and "ability to perform other demands of work, such as seeing, hearing or using other senses."[62] The

---

[56] (Tr. 627.)

[57] (*Id.*)

[58] (*Id.*)

[59] (*Id.*)

[60] 20 C.F.R. § 404.1520c(b)(2).

[61] *Id.* § 404.1513(a)(2).

[62] *Id.* § 404.1513(a)(2)(i), (iii).

regulations differentiate "medical opinions" from "objective medical evidence," which is defined as "medical signs, laboratory findings, or both."[63] And both these categories are distinguished from "other medical evidence," which includes "judgments about the nature and severity of [the claimant's] impairments, [the claimant's] medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis."[64]

      Dr. Treft's letter does not contain any medical opinions as defined in the governing regulations. Rather, it contains a diagnosis and general description of symptoms which may be caused by that condition. Although the letter mentions symptoms which might impact functional abilities, such as hearing loss and loss of coordination, Dr. Treft did not address whether Mr. T. was experiencing these symptoms (other than vision loss), nor did he offer an opinion on the degree to which they limited Mr. T.'s functional abilities. And while the letter states Mr. T. had "some limited vision,"[65] Dr. Treft did not offer an opinion regarding any resulting functional limitations. Instead, he indicated only that Mr. T. still qualified for an unrestricted driver's license. In other words, Dr. Treft's letter does not contain opinions regarding particular work-related functional abilities or limitations, as required to qualify as a "medical opinion" under agency regulations. Additionally, as the Commissioner notes, the letter was written more

---

[63] *Id.* § 404.1513(a)(1).

[64] *Id.* § 404.1513(a)(3).

[65] (Tr. 627.)

11

than a year after Mr. T.'s date last insured,[66] and it does not address Mr. T.'s functional abilities or limitations during the relevant time period before this date.[67]

Because Dr. Treft's letter does not contain medical opinions as defined in agency regulations, the ALJ was not required to specifically discuss it in his decision.[68] The ALJ stated he considered "the entire record,"[69] which included Dr. Treft's letter. The court takes the ALJ at his word.[70] Mr. T. has demonstrated no error in the ALJ's treatment of this evidence.

### C. Vocational Expert's Testimony

Mr. T. contends the ALJ erred in failing to resolve an apparent conflict between the vocational expert's testimony and the Dictionary of Occupational Titles (DOT) with respect to a limitation on overhead reaching.[71]

An ALJ may not rely on evidence from a vocational expert to support a finding of nondisability at step five unless the ALJ asks the expert "how his or her testimony as to the exertional requirement of identified jobs corresponds with the Dictionary of Occupational Titles,

---

[66] (*See* Answer Br. 5–6, Doc. No. 21.) Mr. T.'s date last insured was June 30, 2019. (Tr. 12.)

[67] For a period of disability and disability insurance benefits claim under Title II, the claimant must show disability on or before the claimant's date last insured. *See* Soc. Sec. Ruling No. 83-10, 1983 SSR LEXIS 30, at *20 ("Under [T]itle II, a period of disability cannot begin after a worker's disability insured status has expired.").

[68] *See Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996) ("The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence.").

[69] (Tr. 12, 16.)

[70] *See Bradley v. Colvin*, 643 F. App'x 674, 676 (10th Cir. 2016) (unpublished) ("[W]hen the ALJ indicates he has considered all the evidence[,] [the court's] practice is to take the ALJ at his word." (internal quotation marks omitted)).

[71] (Opening Br. 12–13, Doc. No. 17.)

and elicit[s] a reasonable explanation for any discrepancy on this point."[72] If the vocational expert's testimony "appears to conflict with the DOT," the ALJ must "obtain a reasonable explanation for the apparent conflict."[73] The ALJ must then resolve the conflict before relying on the vocational expert's testimony to support a finding of nondisability, and must "explain in the determination or decision how he or she resolved the conflict."[74] For purposes of this analysis, the DOT includes its companion publication, the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles (SCO).[75]

      At the hearing, the ALJ asked the vocational expert whether there were jobs available for a person with Mr. T.'s age, education, work experience, and RFC, including occasional overhead reaching with the right extremity.[76] The vocational expert testified such a person would be able to perform work duties of a hospital cleaner, laundry worker, and linen room attendant.[77] According to the DOT, all these jobs require frequent reaching.[78] The ALJ asked the vocational expert whether his testimony was consistent with information in the DOT.[79] The vocational expert responded that it was, and offered this clarification regarding the reaching restriction:

> [A]s far as the right overhead being limited to occasional, that, you know, reaching in the DOT and the SCO isn't clearly defined, but I would think the jobs

---

[72] *Haddock v. Apfel*, 196 F.3d 1084, 1087 (10th Cir. 1999).

[73] Soc. Sec. Ruling No. 00-4p, 2000 SSR LEXIS 8, at *9.

[74] *Id.*; *see also Haddock*, 196 F.3d at 1091.

[75] Soc. Sec. Ruling No. 00-4p, 2000 SSR LEXIS 8, at *1.

[76] (Tr. 57.)

[77] (*Id.* at 58–59.)

[78] *See* DOT 323.687-010 (hospital cleaner); DOT 361.685-018 (laundry worker); DOT 222.387-030 (linen room attendant).

[79] (Tr. 61.)

13

> that I cited would require some overhead reaching. Of course, if it was really a problem, you could do it with the other arm, but I don't think the occupations that I cited would be more than occasional overhead reaching. Based on my experience, most of that reaching is going to be done more out in front of the body.[80]

In his decision, the ALJ relied on the vocational expert's testimony in finding Mr. T. capable of performing the three jobs identified.[81] The ALJ also "determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles."[82]

The ALJ did not err in his treatment of the vocational expert's testimony. Addressing similar circumstances, the Tenth Circuit in *Segovia v. Astrue*[83] found no conflict between a vocational expert's testimony and the DOT where the vocational expert testified a claimant could perform jobs defined to require frequent reaching, even though the claimant was limited to occasional overhead reaching.[84] The Tenth Circuit explained:

> Both positions require 'frequent' reaching, while [the claimant] is limited to occasional overhead reaching. For purposes of the SCO, however, 'reaching' is defined as '[e]xtending hand(s) and arm(s) *in any direction*.' The SCO does not separately classify overhead reaching. Thus, under the SCO, even a job requiring frequent reaching does not necessarily require more than occasional *overhead* reaching. The VE was aware of [the claimant's] limitations on overhead reaching, and he testified both that she could perform the jobs he identified and that his opinion of the jobs open to her was consistent with the DOT's specifications. In these circumstances, the VE's testimony does not conflict with the DOT and SCO so much as it clarifies how their broad categorizations apply to this specific case. Further, the DOT descriptions for [the jobs identified] do not

---

[80] (*Id.*)

[81] (*See id.* at 19–20.)

[82] (*Id.* at 20.)

[83] 226 F. App'x 801 (10th Cir. 2007) (unpublished).

[84] *See id.* at 804.

14

indicate that these jobs predominantly involve overhead reaching rather than other types of reaching.[85]

Similarly, the vocational expert in this case was aware of Mr. T.'s limitation on overhead reaching, and he testified a person with Mr. T.'s RFC could perform the jobs identified, even with this limitation. He also confirmed his testimony was consistent with the DOT, including explaining why Mr. T.'s overhead reaching limitation was not inconsistent with the requirements of the jobs identified. Additionally, as in *Segovia*, the DOT descriptions of the jobs identified do not indicate they predominantly involve overhead reaching rather than other types of reaching.[86] Under these circumstances, where the DOT and SCO do not specifically address overhead reaching, the vocational expert's testimony did not conflict with the DOT or SCO. Thus, there was no conflict which the ALJ was required to resolve. The ALJ did not err in finding the vocational expert's testimony consistent with the DOT and relying on it in finding Mr. T. not disabled.

## CONCLUSION

The Commissioner's decision is AFFIRMED.

DATED this 31st day of July, 2023.

BY THE COURT:

*Daphne A. Oberg*
Daphne A. Oberg
United States Magistrate Judge

---

[85] *Id.* (citations omitted) (quoting SCO, Part B, at C-3).

[86] *See* DOT 323.687-010 (hospital cleaner); DOT 361.685-018 (laundry worker); DOT 222.387-030 (linen room attendant).